UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **MARTIN J. WALSH**, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> **US CARE PCA AGENCY, INC.**, a corporation; **MUNA OSMAN**, individually; and **SHOMBE HASSAM**, individually, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No.: 22CV616 |

# COMPLAINT

Pursuant to Section 217 of the Fair Labor Standards Act, of 1938, as amended (29 U.S.C. § 201 *et seq.*) ("FLSA"), Plaintiff, Martin J. Walsh, Secretary of Labor, United States Department of Labor ("Secretary"), brings this action to enjoin and restrain the defendants US CARE PCA AGENCY, INC., a corporation ("US Care"); MUNA OSMAN, individually; and SHOMBE HASSAM, individually (collectively, "Defendants") from violating Sections 207, 211, 215(a)(2), 215(a)3), and 215(a)(5) of the FLSA and to recover unpaid compensation, plus an equal amount in liquidated damages pursuant to Section 216(c) of the Act (29 U.S.C. § 216(c)) for Defendants' employees.

The Secretary, through the Wage and Hour Division, conducted an investigation of Defendants for compliance with the FLSA. The Secretary's investigation reviewed Defendants' employment and pay practices from May 3, 2018 through May 2, 2020 (the "Investigation Period"). Unless stated otherwise, all allegations and conditions described herein pertain to the Investigation Period.

**Jurisdiction and Venue**

1.This Court has jurisdiction of this case. 29 U.S.C. §§ 216(c), 217 and 28 U.S.C. § 1345.

2.This Court is the proper venue because all or a substantial part of the events or omissions giving rise to these allegations occurred in this judicial district.

**Defendants**

3.Defendant US Care is a corporation within this Court's jurisdiction with an office at 201 W. Travelers Trail, Suite, 127, Burnsville, MN 55337 where it conducts business.

4. US Care is a third-party provider of home health care services to clients in and around the Minneapolis area.

5.Defendant Muna Osman has actively managed and supervised US Care's operations and its employees during the Investigation Period. Among other things, Osman has hired and fired employees, set their work schedules, and set their pay rates.

6.Osman has acted directly or indirectly in US Care's interests with respect to its employees and is therefore an "employer" under the FLSA. 29 U.S.C. § 203(d).

7.Defendant Shombe Hassam has actively managed and supervised US Care's operations and its employees during the Investigation Period. Among other things, Hassam has hired and fired employees, set their work schedules, and set their pay rates.

8.Hassam has acted directly or indirectly in US Care's interests with respect to its employees and is therefore an "employer" under the FLSA. 29 U.S.C. § 203(d).

9.During the Investigation Period, Defendants engaged in business within Dakota County, within this Court's jurisdiction.

### The FLSA Applies to Defendants

10. US Care is an "enterprise" under the FLSA due to its related activities performed through unified operation or common control and for a common business purpose. 29 U.S.C. § 203(r).

11. US Care is an "enterprise engaged in commerce" under the FLSA, because it had (i) two or more employees who are engaged in or produced goods for commerce; and (ii) an annual gross volume of sales or business done greater than $500,000 during the Investigation Period. 29 U.S.C. § 203(s)(1)(A).

12. US Care employed Personal Care Assistants ("PCA") to provide in-home personal assistance to its clients.

13. US Care's PCA employees are covered under the FLSA section 202(a) as persons employed in domestic service. 29 U.S.C. §§ 202(a)

### FLSA Violations

### Count 1: Overtime Violations

14. Defendants repeatedly violated Sections 207 and 215(a)(2) of the FLSA when they failed to pay their employees one-and-one-half times their regular rates for hours worked in excess of 40 in a workweek. 29 U.S.C. §§ 207(a)(1), 215(a)(2).

15. Defendants routinely explained to their new PCA employees that US Care was too small and, therefore, unable to afford overtime or time and a half for any hours the new hires worked over 40 in a workweek.

16. Defendants had new PCA employees sign statements indicating they understood that only their regular rate would be paid for the hours worked over 40 in a workweek.

17. From May 12, 2018 through at least May 2, 2020, Defendants payroll records confirmed Defendants routinely paid the employees listed on Exhibit A, attached hereto, their regular rate at which they were employed for workweeks longer than 40 hours without compensating them during such workweeks at rates not less than one and one-half times the regular rate.

18. In addition to not paying overtime as described in paragraphs 14-17 above, Defendants payroll records confirmed Defendants lowered the regular rate of Blanca Carpio, Genesis Cruz, and Katie Rosman, when these employees worked overtime between May 12, 2018 through May 2, 2020.

19. Therefore, Defendants' PCA employees did not receive overtime premiums at one half each employee's regular hourly rate of pay even when employees worked excess of forty hours in a workweek. 29 U.S.C. §§ 207(a)(1), 215(a)(2).

## Count 2: Record Keeping Violations

20. Defendants violated Sections 211 and 215(a)(5) of the FLSA when they failed to keep complete and accurate records. 29 U.S.C. §§ 211, 215(a)(5), 29 C.F.R. Part 516.

21. Defendants failed to record the number of compensable travel time employees worked in a single workweek.

22. Defendants failed to accurately record each employee's accurate regular hourly rate of pay.

23. Defendants failed to properly record each employee's accurate overtime rate of pay.

*Count 3:  Retaliation*

24.	From December 23, 2019 through April 8, 2020, Katie Roseman was employed as a PCA for US Care.

25.	Upon being hired, Roseman was instructed by her employer to turn in her time cards/sheets to US Care every Monday.

26.	From December 23, 2019 through April 8, 2020, US Care's PCA employees were required to obtain pre-authorization from Osman and/or Hassam before working any hours, including the hours mandated by a client's plan of care.

27.	From December 23, 2019 through April 8, 2020, Roseman regularly contacted Osman and/or Hassam to obtain pre-authorization to work a certain work schedule for Client A.

28.	 From December 23, 2019 through April 8, 2020, Osman and/or Hassam regularly directed Roseman on how to fill in the hours on her time cards she was required to turn into PCA before she worked those hours.

29.	On April 8, 2020, Roseman texted a cellphone owned by Osman and/or Hassam to express her concern about how the limited hours she was directed and pre-authorized to work prevented her from being able to follow Client A's plan of care.

30.	She further complained that she was due overtime and demanded PCA pay her overtime for all the hours she worked over 40 in a workweek.

31.	The following are text messages between Roseman and the cellphone owned by Osman and/or Hassam:

| | |
|---|---|
| Roseman: | Here's the deal:  I PCA for [Client A] for 6.5 hours a day minimum.  That's how it has always been when we worked with the other company.  Then I used to do ILS for him as well which he needs but your company apparently doesn't provide service for.  You do however do homemaking.  So I guess that makes up for that?  However, when I reported my income to DHS, my |

|  |  |
|---|---|
|  | worker noticed you weren't paying me overtime, and told me to tell you that's illegal. So I can redo this time card if you would like for [sic] third time, but I would like you to pay me the overtime I already worked, and deserve, backdating to when I started. Then check with DHS regarding the hours [Client A] is supposed to be getting per PCA, and all of the services he needs. If you company is incapable of providing the services he needs, I don't understand why you would take him on as a client in the first place. I will also have him call his worker so we can get this figured out. Every time card has been different. One pay period you tell me to put 9 hours on, the next you tell me I can't even do the 6.5 [CLIENT A] is entitled to. It doesn't make sense, nor does it add up. |
| US Care: | After this time sheets [sic] you done. Look for another agency. |
| Roseman: | That is not how life works here. You don't call your employee and only say what you have to say and not listen. I already worked those hours so you have to not only pay me for them because you ok-ed it via text LAST pay period. All of this is documented and I will be reporting you.

You also have to pay me for the over time [sic]. Whether your company pays it or not. You are the one who told me to work those hours. And at the very least you will pay me my last check. So I expect to see it in my account and the overtime you oked that I worked. 117 hours is 37 hours overtime and every pay period you need to look at. This is so frustrating. |
| US Care: | Lesson [sic] we don't pay overtime. If you have issues with this you can Call department of labor that is it. I am done. |
| Roseman: | Deal. I will. |
| US Care: | That is it you gays [sic] need to go somewhere else. |
| Roseman: | Talk to [CLIENT A]. I'm done. |
| US Care: | Don't text me no more. |

32. US Care terminated Roseman' employment on Wednesday, April 8, 2020.

33. As described in paragraphs 14 through 19 above, Roseman was not paid time and a half for hours worked over 40 in a workweek in her last paycheck.

34. As described in the text messages between Roseman and US Care in paragraph 31 above, Roseman demanded to be paid time and a half for the overtime hours she worked at PCA.

35. As described US Care in paragraph 31 above, US Care terminated Roseman's employment via text message after Roseman complained about and demanded to be paid overtime for all the hours she worked in the past at US Care.

36. Section 15(a)(3) of the FLSA prevents persons from threatening, retaliating, or discriminating in any way against any current or former employee of Defendants for exercising any rights under the FLSA, including, but not limited to, employee complaints regarding FLSA compliance made to Defendants or to the Wage and Hour Division of the United States Department of Labor, or cooperation with an investigation conducted by the Wage and Hour Division. 29 U.S.C. § 215(a)(3).

37. An employee's complaint directly to her employer regarding underpayments for overtime hours worked is a protected activity recognized by 15(a)(3) of the FLSA.

38. US Care discriminated and retaliated against Roseman by terminating her employment directly after she complained about not being paid correctly and demanded time and a half for overtime hours worked.

39. As a result of her sudden termination by Defendants, Roseman was unemployed for several weeks.

40. Defendants violated 15(a)(3) of the FLSA by retaliating against Roseman for precisely exercising her right under the FLSA.

**Remedies Sought**

41. As a result of their FLSA violations, Defendants owe the employees listed in Exhibit A back wages and liquidated damages, under 29 U.S.C. §§ 216(c), 217. If Defendants continued to violate the FLSA after the Investigation Period, then Defendants may owe additional back wages and liquidated damages to employees.

42. Defendants also may owe additional back wages and liquidated damages, during the Investigation Period, to employees whose identities are currently unknown to the Secretary.

43. As a result of Defendants' retaliation against Roseman, Defendants owe Roseman back wages, liquidated damages, backpay for the period of time she was unemployed, compensatory, and punitive damages.

**Prayer for Relief**

As a result of Defendants' repeated FLSA violations, the Secretary respectfully requests this Court enter an Order:

A. Permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and those in active concert or participation with them, from violating Sections 7 and 11 of the FLSA. 29 U.S.C. §§ 215(a)(2), 215(a)(5), and 217(a).

B. Finding Defendants liable for unpaid overtime wages, plus an equal amount in liquidated damages, owing to the employees listed in Exhibit A, as well as to other of Defendants' employees presently unknown to the Secretary. 29 U.S.C. § 216(c);

C. If the Court declines to award liquidated damages, then enjoining and restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding unpaid compensation found owing to Defendants' employees, plus prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury under 26 U.S.C. § 6621;

D. Finding defendants violated section 15(a)(3) of the FLSA by terminating Roseman for complaining to US Care about how it did not properly pay her overtime under the FLSA and exercising her right to file a complaint with the U.S. Department of Labor;

E. Awarding Ms. Roseman back pay for the period she was unemployed and/or underemployed after she was terminated by US Care, compensatory and punitive damages;

F. Providing such other relief as may be necessary and appropriate; and

G. Awarding costs and granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**SEEMA NANDA**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

/s/ Mark H. Ishu
**MARK HENRY ISHU**
U.S. Department of Labor
Office of the Solicitor
230 South Dearborn Street, Rm. 844
Chicago, Illinois 60604
(312) 353-6972
Ishu.Mark.H@dol.gov

*Attorneys for Plaintiff* **Martin J. Walsh***, Secretary of Labor, United States Department of Labor*

# **EXHIBIT A**

1. Safi Abdirahman
2. Samsam Abukar
3. Abdulahi Ali
4. Vernitta Allen
5. Najma Awow
6. Alexander Bigay
7. Blanca Carplo
8. Genesis Cruz
9. Delestine Davis
10. Seynab Diriye
11. Shiyah Ellis
12. Lynnetta Glover
13. Faiza Hussein
14. Hibo Hussein
15. Sakeriye Hussein
16. Abdisamad Kassim
17. Antwaine King
18. Nalma Mahamed
19. Farihia Mohamed
20. Fatuma Mohamed
21. Awale Musa
22. Kimberly Pearson
23. Nita Posey
24. Katie Roseman
25. Bonnie Scarbrough
26. Lemecia Sims
27. Shawn Sjostrom
28. Atlanta Straub
29. Christina Thompson
30. Mary Vasquez
31. Shaekea Vaughn
32. Latonya Williams
33. Mary Willing